IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WHITNEY HARNESS, | )<br>) |
| Plaintiff, | )<br>) Civil Action No. 19-200<br>) Magistrate Judge Maureen P. Kelly |
| v. | ) |
| | ) ECF No. 14 |
| SETON HILL UNIVERSITY, | )<br>) |
| Defendant. | ) |

## OPINION AND ORDER

**KELLY, Magistrate Judge**

Plaintiff Whitney Harness ("Harness") has filed a First Amended Complaint, ECF No. 12, against her former employer, Defendant Seton Hill University ("Seton Hill"), alleging violations of her rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.* ("Title IX"), the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Pennsylvania Human Relations Act, 43 P.S. §§ 951, *et seq.*, ("PHRA"), and the Family and Medical Leave Act ("FMLA"), as amended, 29 U.S.C. § 2601, *et seq.*

Harness alleges that Seton Hill subjected her to discrimination, harassment, and a hostile work environment based on her gender, race, and her association with a disabled son, interfered with her right to take FMLA leave to care for her son, and retaliated against her by firing her when she complained about discrimination and a hostile work environment.

Presently before the Court is Defendant's Rule 12(b)(6) Motion to Dismiss Counts VII and X and Part of Count VIII of Plaintiff's First Amended Complaint, ECF No. 14. For the reasons that follow, the Motion to Dismiss is denied.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

Beginning in March 2008 and until February 27, 2017, Seton Hill employed Harness, an African-American woman, as its field hockey coach.[2] During her tenure as head coach, Harness gave birth to a son who suffers from epilepsy with 20 to 30 seizures per day, and who requires constant monitoring and medication. In November 2016, doctors recommended that he undergo brain surgery to treat his condition.

Plaintiff alleges that Seton Hill was aware of her son's medical condition, and that Chris Snyder, Seton Hill's Athletic Director (the "Athletic Director"), indicated that his condition affected Harness's job performance. At one point, the Athletic Director questioned her professional motivation, and asked, '[i]f it weren't for [your son], would you still be coaching?" ECF No. 12 ¶ 48. Harness assured him that her dedication for her job went beyond a need for healthcare. Id. ¶ 49. Harness alleges that this conversation occurred after she had been complaining for months regarding disparate treatment she experienced as one of three female head coaches and the only female African-American coach at Seton Hill, and the hostile work environment. Id. ¶¶ 11, 34-36, 44.

As examples of disparate treatment, Harness alleges that beginning in 2013, Seton Hill administrators interfered with coaching decisions regarding playing time, team discipline issues,

---
[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to a United States Magistrate Judge conducting all proceedings in this case, including the entry of a final judgment. ECF Nos. 17, 18.

[2] Except where noted, the facts set forth in this Opinion are drawn from the allegations in the First Amended Complaint and are construed in the light most favorable to Harness. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

2

and parent conduct. Id. ¶¶ 16-22. In 2013, two field hockey players sued Harness, Seton Hill and certain of its administrators, alleging that Harness's coaching style was abusive and her training methods were too hard. Seton Hill denied the allegations, and an internal investigation found no evidence of wrongdoing. Seton Hill later settled the case without admitting wrongdoing; however, after the case was resolved, Seton Hill suspended Harness for one week without pay, sent her to conflict resolution training, and placed her on a Performance Improvement Plan. Id. ¶¶ 23-27. After her suspension, Seton Hill further restricted Harness's authority over her team, and required administrative approval of team discipline decisions. Harness alleges that she complained to the Athletic Director and Compliance Director that white and male coaches who engaged in similar coaching methods were not subjected to discipline, and that they received significantly more support from university administrators. Id. ¶¶ 34, 37.

After the birth of her son in November 2016, administrators made comments to Harness about how his health affected her job performance. Id. ¶ 45. The Athletic Director suggested that Seton Hill might be able to find Harness a different, less stressful position, and encouraged her to apply for a position assisting the men's football team. Harness declined the opening, but expressed interest in a new position. Id. ¶¶ 50-53. In early 2017, Harness learned that her son needed surgery and discussed with the Athletic Director her need for a leave of absence of four weeks to care for her son. Id. ¶¶ 54-55. Harness opted to schedule the surgery in the summer when coaching obligations were less demanding. Id. ¶¶ 55-56. The Athletic Director told her he would pass on the information to Seton Hill's President, and would continue to look for a "less stressful" position for Harness. Id. ¶ 58. Despite her request for a leave of absence to care for her ailing son, Seton Hill failed to inform Harness of her right to request leave under the FMLA. Id. ¶ 59. Six weeks later, Harness was fired. Id. ¶ 60.

3

Seton Hill's termination of Harness occurred after video surfaced of team players and high school recruits appearing intoxicated. Id. ¶ 61. When the incident was investigated, team players told Seton Hill officials that Harness instructed them to lie and report that the underage students were "friends, not recruits." Id. ¶ 62. Harness states she told the players to tell the truth, and that despite the availability of a witness who corroborated Harness's version of events, the Athletic Director terminated Harness's employment. Id. ¶¶ 64-67. Plaintiff was replaced by a white female. Id. ¶ 71.

Harness claims that her termination and treatment under these circumstances constitutes, in relevant part, a violation of her rights under the ADA and PHRA based upon her association as the parent of a disabled child, and wrongful retaliation for challenging Seton Hill's treatment of her while she cared for him. Harness further claims that Seton Hill violated her rights under the FMLA, by failing to advise her of her right to FMLA leave to care for her son, and for retaliating against her by terminating her when she attempted to exercise her right to request and take leave.

In the instant Motion to Dismiss, Seton Hill moves to dismiss Harness's claims of violation of the ADA – Retaliation (Count VII) and violation of the PHRA – Retaliation (part of Count VIII). Seton Hill also moves to dismiss Harness's claim of violation of the FMLA (Count X). Seton Hill argues that the factual allegations set forth in the First Amended Complaint fail to establish or infer a *prima facie* claim of disability retaliation under the ADA or the PHRA, and further fail to support her claims for FMLA interference or retaliation. ECF No. 15 at 5. The parties have submitted briefs in support and in opposition to the Motion to Dismiss, ECF Nos. 15, 19, and a reply, ECF No. 22. The Motion to Dismiss is now ripe for consideration.

## II. STANDARD OF REVIEW

A complaint must be dismissed under Fed. R. Civ. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662 (2009).

"Though a complaint 'does not need detailed factual allegations, ... a formulaic recitation of the elements of a cause of action will not do.'" DelRio-Mocci v. Connolly Prop. Inc., 672 F.3d 241, 245 (3d Cir. 2012) (citing Twombly, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but ... disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ethypharm S.A. France v. Abbott Laboratories, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> Twombly and Iqbal require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

Connelly v. Steel Valley Sch. Dist., 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] – that the pleader is

5

entitled to relief." Iqbal, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## III. DISCUSSION

### A. ADA/PHRA Retaliation Claims (Counts VII and VIII)

At Count VI of the Amended Complaint, Harness alleges an associational disability discrimination claim, which also provides the basis for her ADA retaliation claim, set forth at Count VII, and a PHRA disability retaliation claim at Count VIII. Seton Hill does not seek dismissal of Count VI, and the allegations of the Amended Complaint are sufficient to state plausible ADA and PHRA discrimination claims.[3]

The ADA prohibits employers from discriminating against "a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). The ADA defines a "qualified individual" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions" of the job. 42 U.S.C. § 12111(8). The protections of the ADA also extend to protect against adverse employment actions because of a qualified individual's association with a disabled individual. 42 U.S.C. § 12112(b)(4).

In Dodson v. Coatesville Hospital Corporation, No. 18-3065, 773 F. App'x 78 (3d Cir. June 3, 2019), the United States Court of Appeals for the Third Circuit set forth the following standard for a *prima facie* case of associational disability discrimination:

(1) The plaintiff was 'qualified' for the job at the time of the adverse employment action;
(2) The plaintiff was subjected to adverse employment action;
(3) The plaintiff was known by his employer at the time to have a relative or associate a disability; and

---

[3] The parties are in agreement that in relevant part, Harness's ADA and PHRA association claims are subject to the same analysis, ECF No. 15 at 12 and ECF No. 19 at 10-11, and, accordingly, will be resolved together.

6

> (4) The adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision.

Id. at 83 n.8. "Our Court has observed that the fourth element can be met, for example, where an adverse employment action was 'motivated by unfounded stereotypes or assumptions about the need to care for a disabled person'; the 'disabled relative's perceived health care costs to the company', 'fear of an employee contracting or spreading a relative's disease', or because the employee was perceived to be distracted by the relative's disability." Id. (quoting Erdman v. Nationwide Ins. Co., 582 F.3d 500, 511 & n.7 (3d Cir. 2009)).

Harness alleges that both Seton Hill's President and the Athletic Director expressed concern that Harness may be distracted or stressed by her son's condition and that her job performance was necessarily impacted by his illness. ECF No. 12 ¶¶ 47-58. Harness further alleges that she suffered adverse employment actions, both in the manner in which Seton Hill interfered with her coaching and team discipline and in terminating her employment, because of perceived issues related to Harness's care for her son.

In the instant Motion to Dismiss, however, Seton Hill contends that Harness fails to allege facts in the First Amended Complaint from which it can reasonably be inferred that Seton Hill retaliated against her because of any protected activity taken with regard to her son's disability.

The ADA protects against retaliatory action, stating that "no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by" the ADA. 42 U.S.C. § 12203(a).

To survive a Motion to Dismiss her retaliation claims, Harness must allege facts that would plausibly infer (1) that she engaged in protected activity, (2) that she suffered an adverse action either after or contemporaneous with the protected activity, and (3) a causal connection between

7

the protected activity and her employer's adverse action. Feliciano v. Coca-Cola Refreshments USA, Inc., 281 F. Supp. 3d 585, 593 (E.D. Pa. 2017); and see, Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 759 (3d Cir. 2004) (*superseded by statue on other grounds recognized in* Robinson v. First State Community Action Agency, 920 F.3d 182 (3d Cir. 2019); Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997).

Harness contends that she engaged in protected activity when she requested a transfer to a new position after her work ethic, professionalism, and commitment to her job were challenged because of her son's medical condition. ECF No. 12 ¶¶ 45-50, 58; ECF No. 19 at 6-8. Viewing the Amended Complaint in the light most favorable to the nonmoving party, Harness alleges that she was disciplined and subjected to undue supervision after her son's condition was negatively assessed by the Athletic Director, and that she was adversely impacted after she lodged complaints regarding her treatment and requested a transfer in response. Id.

> [P]rotected activity covers a swath of conduct much broader than submitting a formal complaint letter to an employer or the EEOC. See Barber v. CSX Distrib. Servs., 68 F.3d 694, 702 (3d Cir. 1995) (citing Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990)). In Barber, an age discrimination case, the plaintiff had written a letter to human resources expressing his dismay that someone "less qualified" was hired for a job that he had applied for. Id. at 697. The Third Circuit noted that it would examine "the message that [the employee] conveyed, and not the medium of conveyance." Id. at 702 (defining protected activity broadly but finding that the employee's letter was "just too vague).
>
> A Second Circuit Title VII case cited by Barber stated that protected activity can include "making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." Sumner, 899 F.2d at 209.

Emmell v. Phoenixville Hosp. Co., LLC, 303 F. Supp. 3d 314, 331 (E.D. Pa. 2018). In light of the breadth of protected conduct, the district court in Emmell denied an employer's motion for summary judgment as to an ADA retaliation claim where the plaintiff requested a transfer to a

8

different department amid workplace discussions regarding the toll of her illness on work performance and demands. Id.

Harness similarly alleges that supervising personnel made negative comments concerning her performance and stress level because of her son's medical condition, and that she thereafter requested a transfer to a different position.[4] At this early stage of the litigation, Harness's request to transfer under the circumstances alleged was a protected activity under the ADA and is sufficient to support a retaliation claim. See Ruggiero v. Mount Nittany Medical Center, No. 17-2227, 736 F. App'x 35, 41 (3d Cir. 2018) (district court erred in prematurely dismissing ADA retaliation claim where plaintiff sufficiently alleged that she engaged in protected activity when she requested an accommodation for her illness and thereafter suffered an adverse action (termination)).

Seton Hill next contends that Harness fails to allege facts establishing the required causal connection between any protected activity and her termination. "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) an intervening pattern of antagonism [or other evidence of retaliatory animus] coupled with timing to establish a causal link.

---

[4] Seton Hill argues that under the ADA, it does not owe Plaintiff a duty to accommodate her need to take time off to care for her son. The law is clear in this regard:

> The duty owed in the case of a non-employee with a disability is limited, as highlighted by the ADA's interpretive guidelines, which state: "an employer need not provide the applicant or employee without a disability with a reasonable accommodation because that duty only applies to qualified applicants or employees with disabilities." 29 C.F.R. § Pt. 1630, App. In particular, an employer is not required to provide an employee with a modified work schedule as an accommodation to enable the employee to care for a spouse with a disability. Id; see also, Reddinger [v. Hospital Central Services, Inc., 4 Supp. 2d 405, 408 (E.D. Pa. 1998] (explaining that the discrimination by association provision does not require an employer to restructure an employee's work schedule to enable the employee to care for a relative with a disability because that provision does not require the employer to provide a reasonable accommodation).

Pollere v. USIG Pennsylvania, Inc., 136 F. Supp. 3d 680, 684 (E.D. Pa. 2015). However, Harness's ADA and PHRA retaliation claims are not predicated upon Seton Hill's refusal to grant her transfer request but, rather, that her request for a transfer was construed as a complaint, that her employer believed she required the transfer to care for her son, that employer believed her son's condition was otherwise interfering with her ability perform her job as required, and that as a result, she was terminated.

9

Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). "The amount of time between the protected activity and the alleged retaliation is a circumstance to be considered by a fact-finder in determining if the plaintiff has established the required causation." Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 (3d Cir. 2003) (footnote omitted). However, the "'mere passage of time is not legally conclusive proof against retaliation.'" Krouse v. Am. Sterilizer Co., 126 F.3d at 503 (quoting Robinson v. Southeastern Pa. Transp. Auth., 982 F.2d 892, 894 (3d Cir. 1993)).

Seton Hill contends that the two-month period between Harness's request for a transfer and her termination is insufficient as a matter of law to infer a causal connection, and argues that there are no additional factual allegations establishing "disability related antagonist behavior" in the intervening weeks so as to aver a sufficient causal connection. ECF No. 15 at 11. The Court disagrees. As an initial matter, the law does not limit evidence of causation as narrowly as Seton Hill contends:

> [w]here the facts are such that temporal proximity alone is not enough to infer causation, a plaintiff can avoid summary judgment by producing other evidence of causation, such as, for example, producing evidence of a pattern of antagonism or retaliatory motive during the intervening period, or by showing inconsistent reasons given by the employer for the adverse employment action. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280–81 (3d Cir. 2000) (citing Kachmar, 109 F.3d at 177 (pattern of antagonism); Waddell v. Small Tube Products, Inc., 799 F.2d 69, 73 (3d Cir. 1986) (inconsistent reasons for termination)). These factors are not, however, the exclusive means of establishing causation, and absent such proof, the plaintiff may establish a causal link by showing that the totality of the evidence provides the necessary inference. DeFlaminis, 480 F.3d at 267 (citing Farrell, 206 F.3d at 281).

Rubano v. Farrell Area Sch. Dist., 991 F. Supp. 2d 678, 705–06 (W.D. Pa. 2014).

At the pleading stage, proof of a *prima facie* case is not required; rather, Harness's claim is measured by her allegations. Ruggiero v. Mount Nittany Medical Center, 736 F. App'x at 41-42 (temporal proximity of approximately two months (June 5, 2015 – July 31, 2015) between

10

initial notice to employer regarding need for accommodation and termination is sufficient to state a claim). Harness alleges the passage of two months between her request for transfer to address or resolve stated negative perceptions regarding her ability to perform her job because of her son's disability, and her termination. In the context of all of the allegations of the First Amended Complaint, two months is certainly sufficient to raise a plausible inference that her termination was retaliatory, and is enough to permit Harness to proceed to discovery to determine if there is proof of a causal link between her request to transfer and complaints regarding Seton Hill's treatment of her, her son's disability, and her eventual termination. Accordingly, the Motion to Dismiss Count VII and part of Count VIII of Plaintiff's First Amended Complaint is properly denied.

### B. FMLA Claim

Seton Hill next seeks dismissal of the FMLA and FMLA retaliation claims, alleged by Harness at Count X of the First Amended Complaint. ECF No. 15 at 12-19; ECF No. 12 ¶¶ 125-132. The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month period ... [i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). Employers may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter [of the FMLA]." 29 U.S.C. § 2615(a). Thus, under the FMLA, an employee may bring claims against an employer for the (1) interference with the right to twelve weeks of medical leave, and may also bring a separate claim for (2) retaliation premised upon the employer's discharge or other discrimination suffered by an employee who has invoked her right to FMLA leave.

As relevant here, under the applicable FMLA regulations, interference may be found where an employer fails to provide notice of FMLA rights. 29 C.F.R. §§ 825.300(e). To state a claim for interference, however, a plaintiff must allege "impairment of [her] rights and resulting prejudice." Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 90 (2002). Seton Hill argues that even if it failed to advise Harness of her right to request FMLA leave, she has not alleged the requisite prejudice because she was terminated well in advance of her need for leave. ECF No. 15 at 13-14. Harness responds that her termination after lodging a request for leave constitutes legally sufficient interference. See, ECF No. 19 at 14, citing Erdman v. Nationwide Ins. Co., 582 F.3d at 509 ("[f]iring an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee."). In addition, separate and apart from Harness's allegations regarding the timing of her termination, discovery may reveal whether, if advised in January 2017 of her rights to FMLA leave, Harness would have requested leave immediately rather than delay her son's surgery to make it more convenient for her employer ("Harness chose this timeframe [summer 2017] for surgery to allow for preoperative evaluation and to ensure that the surgery would occur during the summer when work was less busy." ECF No. 12 ¶ 56). A plaintiff may "show an interference with [her] right to leave under the FMLA, within the meaning of 29 U.S.C. § 2615(a)(1), if [s]he is able to establish that this failure to advise [of her rights under the FMLA] rendered h[er] unable to exercise that right in a meaningful way, thereby causing injury." Conoshenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135, 143 (3d Cir. 2004). Under the circumstances alleged, and at the pleading stage of the proceedings, Harness has sufficiently stated an FMLA interference claim.

Harness similarly states a claim for retaliation under the FMLA. "To assert a retaliation claim, a plaintiff must demonstrate that: (1) he or she is protected under the FMLA, (2) he or she

12

suffered an adverse employment action, and (3) the adverse action was causally related to the plaintiff's exercise of his or her FMLA rights." Erdman v. Nationwide Ins. Co., 582 F.3d at 508. Harness alleges that she was terminated within weeks of her request for an anticipated FMLA leave and, as with her ADA retaliation claim, alleges sufficient antagonistic behavior regarding her son's medical condition impacting job performance to causally connect her request for leave to alleged retaliatory conduct. Harness will bear the burden of proof of her claims, but at this stage, she has alleged all necessary elements for an FMLA retaliation claim.

## IV. CONCLUSION

For the foregoing reasons, Defendant Seton Hill University's Motion to Dismiss, ECF No. 14, is denied. Accordingly, the following Order is entered:

### ORDER

AND NOW, this 30th day of September, 2019, upon consideration of Defendant's Rule 12(b)(6) Motion to Dismiss Counts VII and X and Part of Count VIII of Plaintiff's First Amended Complaint, ECF No. 14, and the briefs in support and in opposition thereto, ECF Nos. 15, 19, and 22, and for the reasons set forth in the accompanying Opinion, IT IS HEREBY ORDERED that the Motion to Dismiss is denied.

BY THE COURT:

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record via CM/ECF